**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MARY ISERMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 16 C 8096 |
| v. | ) | |
| | ) | Magistrate Judge |
| NANCY A. BERRYHILL, Acting | ) | Michael T. Mason |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Michael T. Mason, United States Magistrate Judge:

Claimant, Mary Iserman ("Claimant") ") brings this motion to reverse the final decision of the Commissioner of Social Security ("Commissioner"), denying Claimant's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under 42 U.S.C. §§ 416(i) and 423(d) of the Social Security Act ("the Act"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, Claimant's motion for summary judgment [13] is denied in part and granted in part, and the Commissioner's motion for summary judgment [21] is denied. The case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**I. BACKGROUND**

**A. Procedural History**

Claimant filed for DIB and for SSI on July 11, 2012, due to depression, chronic arm pain, and anxiety, alleging a period of disability beginning January 1, 2010, with a

date last insured of June 30, 2012. (R. 81, 177.) Claimant's application for SSI was denied on July 24, 2012 because her resources were greater than the Illinois required minimum. (R. 177, 185.) Nothing in the record reflects that Claimant requested reconsideration of the Social Security Administration's ("SSA") denial. (R. 345.) The ALJ did not discuss Claimant's SSI claim in his opinion. (R. 13-24.)

Claimant's DIB claim was initially denied on November 1, 2012. (R. 105-09.) Claimant requested reconsideration of the denial of DIB on December 18, 2012. (R. 110.) After reconsideration, the claim was denied again. (R. 92.) Thereafter, Claimant filed a written request for hearing. (R. 119.) Claimant, represented by counsel, initially appeared and testified at a hearing before ALJ Lorenzo Level. (R. 33-70.) Vocational Expert ("VE") Aimee Mowery also testified during the hearing. (*Id.*) Claimant then had a supplemental hearing, at which time VE Glee Ann L. Kehr appeared. (R. 73-80.)

ALJ Level issued his decision on February 23, 2015. (R. 13-24.) The ALJ denied Claimant's claims for DIB, finding her not disabled for the relevant period. (*Id.*) The Appeals Council denied Claimant's request for review on June 21, 2016. (R. 1-4.) Because the SSA Appeals Council denied Claimant's request for review, the ALJ's decision is the final decision of the Commissioner and is, therefore, reviewable by District Court under 42 U.S.C. § 405(g).

### B. Medical Evidence

Claimant alleged that her disability stemmed from depression, anxiety, and chronic arm pain, including pain in her left forearm and pain in her right shoulder. Claimant visited the Paulson Rehab-La Grange Clinic three times between March 25, 2010 and April 7, 2010 due to pain in her left elbow and was seen by Dr. Mark

2

Coleman. (R. 565-67.) Physical therapy increased her shoulder, wrist, and elbow strength, but her grip strength remained weak. (*Id.*) On June 4, 2010, Dr. Lee Weiss at Pillars diagnosed Claimant with major depression and generalized anxiety disorder. (R. 464.)

On April 7, 2011, Claimant visited Community Nurse Health Association complaining of chronic pain in her upper right shoulder. (R. 490.) She received a diagnosis of chronic neuromuscular pain in the right upper back and shoulder. (*Id.*)

On June 1, 2011, Mark Maciuszek of Pillars reported that her feelings of depression limited her ability to complete her activities of daily living. (R. 621-25.) He further mentioned that Claimant had "successfully achieved her goal of finding work," referring to her part-time job at the Flame. (R. 621.)

Claimant attended occupational therapy at Paulson Rehab-La Grange seven times between February 15, 2012 and March 12, 2012. (R. 536.) The reporting therapist noted that her pain, at its worst, was unchanged by physical therapy. (*Id.*) Claimant reported attempting to use her left arm in activities of daily living but that the pain or spasm was limiting. (*Id.*) There were no improvements noted in her left upper extremity following four weeks of therapy, and neither her short-term nor her long-term goals were met in that time. (*Id.*)

On July 8, 2014, Dr. Nasreen Ansari, completed an assessment of Claimant. (R. 958.) In her report, she stated that Claimant would have been unable to work full-time from January 1, 2010 to the July 8, 2014. (*Id.*) She based this opinion on an elbow/arm fracture with residual pain and reduced range of motion, shoulder pain, arthritis, foot pain, and low back pain. (R. 959.)

### 1. Agency Consultants

On October 3, 2012, Dr. Herman Langner saw Claimant for a psychiatric evaluation. (R. 673.) Claimant self-reported a long history of depression, no energy, and lack of desire to leave the house and do anything. (*Id.*) This situation was elevated by the pain in her arm and the fact that "her two grown sons are sitting at home not doing anything." (*Id.*) Dr. Langner diagnosed Claimant with dysthymic disorder. (R. 675.)

Also on October 3, 2012, Dr. Mahesh Shah saw Claimant for an internal medicine consultative examination. (R. 677.) Her right hand reflected no limitations or difficulties. (R. 681.) Her left hand reflected moderate difficulties with opening a door knob, squeezing the blood pressure cuff, picking up a coin, buttoning, zipping, tying shoelaces, and pinching. (*Id.*) Claimant's grip strength was at 3/5 in her left hand. (*Id.*) Dr. Shah reported that Claimant may have had nerve injury to the left forearm and needed a further work-up, such as an EMG, nerve conduction velocity. (R. 680.)

Claimant's file was also reviewed by Dr. Young-Ja Kim and Dr. R. Leon Jackson. (R. 85-90.) Dr. Jackson determined that she had affective and anxiety-related disorders—specifically that Claimant suffered from a medically determinable impairment that did not precisely satisfy the diagnostic criteria of a listing. (R. 85.) He assessed Claimant's psychological application as non-severe. (*Id.*)

Dr. Kim rated Claimant as being able to occasionally lift less than twenty pounds and to frequently lift less than ten pounds. (R. 87.) She could stand or walk about six hours in an eight-hour work day and could sit for about six hours in an eight-hour work day. (*Id.*) He rated her gross and fine manipulations as limited with her left hand. (R.

87-88.) Dr. Kim opined that Claimant's medically determinable impairments could reasonably be expected to produce her pain or other symptoms. (R. 86.) He found that Claimant's statements about intensity, persistence, and functionally limiting effects of the symptoms were not substantiated by the medical evidence alone and believed Claimant's statements to be partially credible. (*Id.*)

Additionally, Dr. Terry A. Travis reviewed Claimant's psychiatric file and found that Claimant suffered from affective and anxiety-related disorders, but that her restrictions on activities and social functioning were mild. (R. 98-99.) He similarly determined her application to be non-severe. (R. 99.)

On March 28, 2013, Dr. Vidya Madala reviewed Claimant's physical medical records. (R. 102.) Dr. Madala reported that Claimant could occasionally lift fifty pounds and frequently lift twenty-five pounds. (R. 100.) He noted that Claimant would have limited handling and fingering in her left hand. (R. 101.) He further determined that Claimant's medical impairments could produce Claimant's pain and symptoms, but that Claimant's statements about intensity, persistence, and functionally limiting effects were not substantiated by the objective medical evidence alone. (R. 99.)

### 2. Claimant's Testimony

Claimant testified that she was alleging a January 1, 2010 onset date at the recommendation of her psychological counselor. (R. 37.) She explained that she could not lift a gallon of milk or a heavy book. (R. 37-38.) She could pick up a penny if she "pushed it off to the edge of the counter." (R. 37, 39.) She would not trust herself to pick up a plate because her hand would give out and cause her to drop things. (R. 38-39.) She had a "constant burn" in her right shoulder that caused her to be incapable of

5

combing her hair with her right arm. (R. 40.) Claimant testified that she spent 75-80% of the day lying in bed, not including time she is asleep. (R. 42.)

She explained that has worked part-time off and on since her children's birth. (R. 49.) Her most recent work was as a part-time bookkeeper at a family restaurant two days a week for four hours a day. (R. 46-47.) In 2011, Claimant made about $8,000.00 working at this job. (*Id.*) In 2010, she made $5,000.00 working in aftercare at St. Cletus Church. (*Id.*) Claimant testified that she collected unemployment in 2012 and that benefits had run out in 2013. (R. 51.) She wanted to work if she could and in 2012, looked at job fairs for "anything light" that would not require lifting. (*Id.*)

## II. LEGAL ANALYSIS

### A. Standard of Review

This Court will affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015). Substantial evidence is more than a scintilla of evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater,* 55 F.3d 300, 305 (7th Cir. 1995) (*quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971)). We must consider the entire administrative record, but will not "re-weigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011). This Court will "conduct a critical review of the evidence" and will not let the Commissioner's decision stand "if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

While the ALJ "must build an accurate and logical bridge from the evidence to [his] conclusion," he need not discuss every piece of evidence in the record. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). At a minimum, the ALJ must "sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning." *Carlson v. Shalala,* 999 F.2d 180, 181 (7th Cir. 1993) (per curiam) (*quoting Stephens v. Heckler,* 766 F.2d 284, 287 (7th Cir. 1985) (internal quotations omitted)).

### B. Analysis Under the Social Security Act

In order to qualify for DIB, a claimant must be "disabled" under the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is disabled, the ALJ must consider the following five-step inquiry: "(1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he can perform past relevant work, and (5) whether the claimant is capable of performing any work in the national economy." *Dixon,* 270 F.3d at 1176. Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008). The claimant has the burden of establishing a disability at steps one through four.

*Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001). If the claimant reaches step five, the burden then shifts to the Commissioner to show that "the claimant is capable of performing work in the national economy." *Id.* at 886.

The ALJ applied this five-step analysis. At step one, the ALJ found that the Claimant had not engaged in substantial gainful activity since her alleged onset date of January 1, 2010 through her date last insured of June 30, 2012. (R. 15.) At step two, the ALJ found the claimant suffered from the following severe impairments: status-post left upper extremity injury with surgery; dysthymia; depression; and anxiety. (*Id.*) At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17.) At step four, the ALJ determined that Claimant had the RFC to perform medium work as defined in 20 C.F.R. 404.1567(c), except Claimant could understand, remember, and carry out simple instructions and perform simple tasks; and Claimant could have frequent interactions with the public, coworkers, and supervisors. (R. 19.) The ALJ found that Claimant had no past relevant work. (R. 22.)

Lastly, at step five, the ALJ found that through the date last insured, given Claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Claimant could perform, such as hand packager or dining room attendant. (R. 23.) Therefore, the ALJ found that Claimant had not been under a disability at any time from January 1, 2010 through her date last insured, June 30, 2012. (*Id.*)

Claimant argues that the ALJ failed to (1) decide Claimant's SSI claim; (2) properly evaluate Claimant's subjective symptoms; (3) assess Claimant's RFC correctly because he improperly rejected all of the medical opinions of record; and (4) include Claimant's moderate limitation in concentration, persistence, and pace in his hypotheticals to the VE and in his determination of Claimant's RFC.

### 1. Claimant's SSI claim was not before the ALJ because she did not exhaust her administrative remedies.

Claimant argues that we must remand for an adjudication of her SSI claim because it was not addressed by the ALJ. The Commissioner responds that Claimant forfeited her claim by failing to timely request reconsideration. Claimant does not address the Commissioner's response in her reply. Claimant's application for SSI was denied because her resources were greater than the Illinois required minimum. (R. 177, 185.) Nothing in the record reflects that Claimant requested reconsideration of the SSA's denial. On July 29, 2014, Claimant's counsel sent a letter to the Administrative Law Judge ("ALJ") that claimed, "Claimant has a Title XVI claim for supplemental security income pending." (R. 345.) The ALJ did not discuss Claimant's SSI claim in his opinion. (R. 13-24.) Claimant has not offered any evidence to contest the determination that her countable resources exceed the required minimum.

If a claimant is "dissatisfied with the initial determination, reconsideration is the first step in the administrative review process[.]" 20 C.F.R. § 404.907. A written request for reconsideration must be filed within 60 days of notice of the initial determination, unless an extension of time is warranted. 20 C.F.R. § 404.909(a)(1). The letter Claimant's counsel sent to the ALJ in 2014 was not a request for reconsideration. (R. 345.) It also incorrectly asserts that Claimant's SSI claim was still "pending." (*Id.*)

9

Claimant's SSI claim was not pending at that time since the SSA had determined Claimant's countable resources were too high for her to be eligible for SSI. (R. 177.) Because Claimant did not properly request review of the decision regarding her SSI claim, it was not properly before the ALJ and the ALJ did not err by failing to address the claim.

Claimant was required to follow whatever process the SSA elects before she could bring her claim before this Court. The determination of whether Claimant forfeited her claim by failing to timely request reconsideration is reserved for the SSA. Since Claimant has not requested reconsideration or pursued the process required by the SSA, there is no final decision in this case that is ripe for this Court's review.

### 2. The ALJ failed to properly evaluate Claimant's subjective symptoms.

Claimant argues that the ALJ improperly assessed her credibility. Since the ALJ issued his decision in this case, the SSA has issued new guidance on how the agency assesses the effects of a claimant's alleged symptoms. SSR 96-7p and its focus on "credibility" has been superseded by SSR 16-3p in order to "clarify that subjective symptom evaluation is not an examination of the individual's character." *See* SSR 16-3p, 2016 WL 1119029, at *1 (effective March 16, 2016); *Cole v. Colvin,* 831 F.3d 411, 412 (7th Cir. 2016) ("The change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character.") Though SSR 16-3p post-dates the ALJ hearing in this case, the application of a new social security regulation to matters on appeal is appropriate where the new regulation is a clarification of, rather than a change to, existing law. *Pope v. Shalala*, 998 F.2d 473, 482-83 (7th Cir. 1993), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561 (7th Cir.

1999).  Therefore, it is appropriate to evaluate Claimant's descriptions of her subjective symptoms pursuant to both existing case law and the guidance the Administration has provided in SSR 16-3p.  *McWilliams v. Berryhill*, No. 15-CV-1588, 2017 WL 1498560, at *11 (N.D. Ill. Apr. 25, 2017).

As before, under SSR 16-3p, the ALJ must carefully consider the entire case record and evaluate the "intensity and persistence of an individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities."  SSR 16-3p, 2016 WL 1119029 at *2.  The two step process to evaluate a claimant's statements regarding intensity, persistence, and limiting effects of symptoms remains the same.  Under SSR 16-3, the ALJ must first determine whether a claimant has a medically determinable impairment that could reasonably be expected to produce her symptoms.  *Id.*  Then, the ALJ must evaluate the "intensity, persistence and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities."  *Id.*  Whenever an individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding based on a consideration of the entire case record, including "the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record."  *Id.* at *5.

The ALJ need not mention every piece of evidence so long as he builds an accurate and logical bridge from the evidence to his conclusion.  *Id.*  The Court will only

reverse the ALJ's credibility finding if it is "patently wrong." *See Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). The ALJ's credibility determination is patently wrong if it lacks "any explanation or support." *Elder*, 529 F.3d at 413–14.

Here, Claimant asserts that the ALJ's statements that her medically determinable impairments could reasonably cause the symptoms she alleged and that there had been no underlying clinical diagnosis established were contradictory. The Commissioner responds that this characterization is supported by the evidence because there is no medical evidence of record indicating a specific diagnosis. While objective medical evidence is certainly a useful indicator in making a determination about the intensity and persistence of symptoms, an ALJ may not disregard an individual's statements solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual. SSR 16-3p 2016 WL 1119029 at *4-5 (similar language was present in the previous SSR 96–7p, 1996 WL 374186, at *6); *see also Knight v. Chater,* 55 F.3d 309, 314 (7th Cir. 1995). The ALJ should also consider statements from the individual, medical sources, and any other sources that might have information about the individual's symptoms, including agency personnel, as well as the factors set forth in the regulations. SSR 16-3p 2016 WL 1119029 at *5-6.

Claimant produced evidence that shows her limitations are severe including her own testimony (R. 37-53), medical records (R. 565, 706, 536), and statements from her neighbor (R. 235-42). None of these sources are adequately addressed in the ALJ's opinion. Instead, the ALJ appears to select particular statements made by Claimant that address her capabilities while not acknowledging Claimant's statements about

restrictions. For example, the ALJ discusses Claimant's ability to walk her dogs, ability to go to the library, and her part-time work. ALJ Level, however, does not discuss Claimant's testimony about her inability to lift certain objects or the various pains caused by particular actions. Claimant's neighbor, Ms. Funk, also provided information regarding Claimant's limitations, but the ALJ, again, only focused on the statements regarding what Claimant was able to do. The ALJ mentioned Ms. Funk's report that Claimant had difficulty with yardwork and that her arm pain had worsened, but then discounts the rest of her report because it is "not supported" by the medical evidence.

    The ALJ is obligated to consider all relevant medical evidence and may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding. *Goble v. Astrue,* 385 Fed. App'x. 588, 593 (7th Cir. 2010). Notably, the ALJ was also selective in his discussion of Claimant's medical records. Claimant sought continuous treatment for her left arm between 2010 and 2012 at her occupational therapy center. (R. 565, 706, 536.) Despite attending therapy for several sessions between January 1, 2010 and June 30, 2012, she was discharged without showing signs of improvement. (*Id.*) Later in 2012, she returned to therapy for four weeks with similar results. (R. 536.) The ALJ fails to address these records at all, except to state that she demonstrated an increase in range of motion following her sessions. The ALJ further dismisses multiple instances of physical therapy and appointments at the Community Nurses Health Center because the treaters were "unable to determine an etiology" of Claimant's complaint.

    The etiology of extreme pain is often unknown. One cannot infer from the inability of a person's doctors to determine what is causing her pain that she is faking it.

13

*Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010), as amended on reh'g in part (May 12, 2010) (internal citations omitted). A lack of objective medical evidence does not necessarily mean that an ALJ may discredit a claimant's subjective complaints of pain. *Goble*, 385 F. App'x at 592.

Here, Claimant's medical records show she had steady, chronic pain in her left forearm with reduced grip strength and a consistent burning sensation in her right arm that prevented a full range of motion. The symptoms remained constant and she sought help from multiple sources. Not one of the doctors, nurses, therapists, or friends doubted Claimant's pain or thought she was exaggerating it. Instead, they suggested she get MRIs, EMGs, and even hand surgery in attempts to obtain a diagnosis. Accordingly, we find that the ALJ's reasoning is impermissible cherry-picking and mandates remand. *See Goble,* 385 Fed. App'x. at 593.

Further, the Seventh Circuit has repeatedly warned the SSA against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home. *Craft*, 539 F.3d at 680. A person's ability to perform daily activities does not necessarily translate into an ability to work full-time, especially if those activities are significantly limited. *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). Here, the ALJ emphasized Claimant's abilities to complete certain activities of daily living such as cooking, laundry, shopping, and driving in support of his determination. On remand, the ALJ is to consider the record as a whole and not cherry-pick certain ADLs that support the ALJ's determination.

> **3. The ALJ does not provide logical support for his RFC determination due to his assessment of the medical opinion evidence.**

### i. Weight of Medical Opinions

Claimant next argues that the ALJ erred in his assessment of the medical opinion evidence.  A treating physician's opinion is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence" in the record.  20 C.F.R. § 404.1527(d)(2); *Punzio,* 630 F.3d at 710; *Eakin v. Astrue*, 432 F. App'x 607, 612 (7th Cir. 2011).  If the ALJ does not grant a treating source's medical opinion controlling weight, then he must consider the following factors, including the examining relationship, treatment relationship, length and frequency of treatment, nature and extent of treatment, supportability, consistency, specialization, among others.  20 C.F.R. § 404.1527(c).  An ALJ who declines to give controlling weight to the opinion of a treating physician must offer "good reasons" that are "sufficiently specific" in explaining what weight, if any, he assigned it.  20 C.F.R. § 404.1527(d)(2); *Schmidt v. Astrue,* 496 F.3d 833, 842 (7th Cir.2007); *Eakin*, 432 F. App'x at 612.

Here, the ALJ granted "little weight" to the opinion of Claimant's psychiatrist, Dr. Weiss[1], because his report was rendered after Claimant's date last insured ("DLI").  Dr. Weiss did not complete the paperwork at issue until October 22, 2013; however, he had treated Claimant for the length of the period at issue.  Claimant presented to Dr. Weiss five times between June 2010 and June 2012.  (R. 464-73.)  The ALJ's decision to grant Dr. Weiss's opinion little weight because he completed the paperwork past Claimant's DLI is not a sufficiently good reason where Dr. Weiss had such a lengthy history of treatment with Claimant.

---

[1] The ALJ incorrectly lists Dr. Lola White as Claimant's treating psychologist, however, Claimant was mainly seen by Dr. Weiss and the report completed on October 22, 2013 was completed by Dr. Weiss.

Furthermore, the ALJ discounts Dr. Weiss's opinion because it is "not well-supported by the records dated on or before the DLI" because, according to the ALJ, the record shows that Claimant was performing daily activities and taking care of her dog "without any assistance." (R. 22.) These reasons, alone, are not sufficient to uphold the ALJ's determination. Dr. Weiss reported that Claimant had poor ability to maintain attention and concentration, poor ability to perform activities within a schedule and to be punctual, and even poor ability to sustain a routine without special supervision. (R. 921.) The ALJ's RFC included limitations that Claimant could understand, remember, and carry out simple instructions and perform simple tasks and could have frequent interaction with the public, coworkers, and supervisors. The evidence presented by Dr. Weiss suggests that Claimant has more psychological limitations than included by the ALJ in his RFC.

Additionally, the ALJ granted Dr. Ansari, Claimant's primary care physician, little weight because the ALJ found that her report included no medical or clinical findings to support her determination. Claimant argues that such clinical, objective findings exist in the record. While there is medical evidence in the record that appears to support Dr. Ansari's opinion, nothing in the record reflects that Dr. Ansari had a continuing relationship with Claimant prior to 2014. Further, the form completed by Dr. Ansari does not reflect what she reviewed before completing the report. However, the ALJ discounts Dr. Ansari's opinion by stating it is not supported by the record, including evidence that Claimant is able to independently tend to her activities of daily living. As previously noted, Claimant does not independently tend to her activities of daily living and requires significant help from a neighbor and her sons to complete these activities. While the

ALJ may have been justified in according little weight to Dr. Ansari, on remand he is to properly consider the evidence of Claimant's activities of daily living.

Further, the ALJ granted "little weight" to Mark Maciuszek's opinion because Mr. Maciuszek opined that Claimant's arm pain contributed to her inability to find a job. (R. 659.) The ALJ finds this statement to be outside the scope of Mr. Maciuszek's specialty and "was likely based on [C]laimant's subjective complaints." (R. 21, 659.) Mr. Maciuszek oversaw the treatment of Claimant at Pillars and diagnosed her with major depressive disorder. (R. 659.) Claimant also presented with severe anxiety regarding her inability to work due to her alleged disabilities and with "a cognitive fixation on her struggles impacting her ability to concentrate or make thought out decisions." (*Id.*) The ALJ does not address the weight he granted Mr. Maciuszek's opinion regarding those issues he is uniquely qualified to address—Claimant's mental state and ability to function based on her major depressive disorder, her anxiety, and her cognitive fixations. Instead, he rejects Mr. Maciuszek's opinion for mentioning her arm pain when he is not a physician. Moreover, the ALJ's failure to address the medical records provided by the Community Nurse Health Center, where Claimant was seen during the time at issue, requires remand.

Lastly, the ALJ granted limited weight to the opinions of the State Agency Medical Consultants because they based their opinions solely on evidence dated after Claimant's disability insured status had expired. Since both reports do appear to rely heavily on the October 2012 exam attended by Claimant, we cannot say that the ALJ erred by granting limited weight to those medical consultants.

### ii. RFC Assessment

Considering the record before the Court, it is unclear how the ALJ concluded that Claimant would be able to function at a medium RFC. *See Barrett v. Barnhart,* 355 F.3d 1065, 1066–67 (7th Cir.2004) (finding reversible error when ALJ determined that claimant could stand for two hours because there was no medical evidence to support such a conclusion). In assessing a claimant's RFC, "the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue,* 556 F.3d 558, 563 (7th Cir. 2009.) The RFC is an administrative assessment of what work-related activities an individual can perform despite her limitations. *Dixon*, 270 F.3d at 1178. The determination of a claimant's RFC is a matter for the ALJ alone, not a treating or examining doctor, to decide. *Thomas*, 745 F.3d at 808 (7th Cir. 2014). The RFC determination should include a discussion describing how the evidence, both objective and subjective, supports the ultimate conclusion. SSR 16–3p*; Conrad v. Barnhart,* 434 F.3d 987, 991 (7th Cir.2006); *Briscoe v. Barnhart,* 425 F.3d 345, 352 (7th Cir.2005); *Myers v. Apfel,* 238 F.3d 617, 621 (5th Cir.2001). When an ALJ denies benefits, he must build an "accurate and logical bridge from the evidence to [his] conclusion." *Clifford,* 227 F.3d at 872; *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010). An ALJ is not allowed to "play doctor" by using his own lay opinions to fill evidentiary gaps in the record. *See Blakes v. Barnhart,* 331 F.3d 565, 570 (7th Cir.2003); *Suide,* 371 F. App'x at 690.

As discussed above, the ALJ erred in according little weight to certain medical opinions. Such opinions, had they been properly considered, may have an impact on the ALJ's RFC assessment. Accordingly, the RFC selected by the ALJ does not have the necessary evidentiary support because the ALJ himself rejected medical examiners

18

of record and granted little weight to the subjective evidence. Therefore, remand is appropriate.

### 4. Hypotheticals to the VE.

The Court is remanding this matter in order to address the above-described flaws in the ALJ's subjective symptom evaluation and RFC assessment. Because the outcome of that re-evaluation may result in a different RFC assessment, the Court need not now address Claimant's arguments about the hypotheticals posed to the VE. On remand, however, the ALJ is required to consider all limitations within the record when posing hypotheticals to the VE.

### **CONCLUSION**

For the foregoing reasons, Claimant's motion for summary judgment [13] is granted in part, the Commissioner's Motion for Summary Judgment [21] is denied, and the decision of the ALJ is remanded to the Social Security Administration for proceedings consistent with this Opinion.

**ENTERED:**

_____
**Michael T. Mason**
**United States Magistrate Judge**

**Dated: November 2, 2017**